**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| AMADI NNODIM, | |
| Plaintiff, | No. 24-cv-12162-IT |
| v. | |
| U.S. BANK NATIONAL ASSOCATION and SN SERVICING CORPORATION, | |
| Defendants. | |

**REPORT AND RECOMMENDATION ON**
**DEFENDANTS' RENEWED MOTION TO DISMISS (D. 25)**

CABELL, U.S.M.J.

Plaintiff Amadi Nnodim contends that the entities holding and servicing the mortgage to his residence, defendants U.S. Bank National Association (U.S. Bank) and SN Servicing Corporation (S.N. Servicing), have repeatedly harassed, threatened and retaliated against him because he previously sued them in 2022 ("the 2022 lawsuit").[1] The operative amended complaint asserts several statutory and common law claims. The defendants move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the complaint for

---

[1] In the (presently pending) 2022 case, *Nnodim v. U.S. Bank Nat'l Ass'n*, 22-cv-11125-DLC, the named loan servicer is Rushmore Loan Management Services LLC; SN Servicing apparently took over Rushmore's loan servicing obligations, hence their inclusion in this suit. (*See* D. 1 at 64, D. 14-17 at 2).

failure to state a valid claim.  (D. 25).[2]  For the reasons that follow, the court recommends that the motion be granted in part and denied in part.

## I.    Relevant Factual and Procedural Background

The parties have been embroiled in a dispute for years.  In brief, the defendants previously initiated foreclosure proceedings on the plaintiff's home because he reportedly defaulted on his mortgage.  The plaintiff cured the default, and the defendants ceased their foreclosure efforts.  However, the plaintiff remained displeased with the way he had been treated and consequently filed the 2022 lawsuit.

Against that backdrop, the instant complaint alleges that the defendants have subjected the plaintiff to various forms of maltreatment, both to force him to drop the 2022 lawsuit, and because he has refused to drop the lawsuit.  As an example, the plaintiff asserts that the defendants have improperly increased his mortgage payments to include attorneys' fees the defendants allegedly incurred during the prior foreclosure proceedings.  The plaintiff also alleges that the defendants threatened to foreclose upon his house if he did not withdraw the 2022 lawsuit and pay the

_____

[2] To be clear, the plaintiff filed an original complaint which the defendants moved to dismiss.  The plaintiff then filed the operative amended complaint and the defendants in response simply renewed their motion to dismiss to apply to it.  (D. 1, 10, 23, 25).

increased fees.  (D. 23 ¶¶ 10, 32, 73, 91, 96).  The plaintiff further alleges that the defendants are receiving and cashing his mortgage checks but are not crediting them to his account balance. (D. 23 ¶¶ 25, 96).

The amended complaint asserts seven claims for:  (1) violation of the plaintiff's constitutional rights under 42 U.S.C. § 1983; (2) violation of the Massachusetts Civil Rights Act ("the MCRA"), M.G.L. c. 12, § 11I & H; (3) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e; (4) violation of M.G.L. c. 93A; (5) intentional infliction of emotional distress; (6) breach of contract; and (7) breach of the implied covenant of good faith and fair dealing.

On May 5, 2025, the court scheduled a hearing for May 14 on the defendants' motion to dismiss.  Because the plaintiff had moved to strike the motion for failure to confer but had not filed an actual opposition on the merits, the court gave the plaintiff a week—until May 12—to do so.  (D. 32).  The plaintiff did not file any opposition, however.

The court convened the hearing on May 14 as scheduled. Defense counsel appeared but plaintiff's counsel did not.  The court chose to proceed with the hearing and "consider the pending

motion on the merits (without input from plaintiff's counsel)."[3] (D. 34).

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide "enough facts to state a claim [for] relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). The facts, accepted as true, must "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, the allegations must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and must show more than "a sheer possibility that a defendant has acted unlawfully." *Id.*

---

[3] Following the hearing, the court entered an order on the docket directing plaintiff's counsel to file a written response by May 16 explaining why he failed to appear for the May 14 hearing. (D. 34). Counsel did not respond to the court's directive. On May 19, the court entered a notice scheduling a status conference for May 22, and indicated it would likely recommend that the case be dismissed for failure to prosecute should counsel fail to appear. The court also mailed a copy of the notice to counsel's law office. (D. 35). This time, counsel did respond, and did appear at a status conference held on May 23. Counsel represented that he had received the mailed notice of the status conference but inexplicably had never received any of the electronic notices the court had issued on May 5, 14 or 19. The court expressed its difficulty in understanding what CM-ECF anomaly plausibly might have caused counsel——who regularly litigates cases in this court——to fail to receive the particular notices at issue, but ultimately chose not to explore the matter further.

**III. Discussion**

A. <u>Count One – 42 U.S.C. § 1983</u>

Count One alleges a violation of section 1983.[4]  Section 1983 creates a private right of action against any person who, under color of state law, "subjects, or causes to be subjected, any . . . person within the jurisdiction [of the United States] to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]"  42 U.S.C. § 1983.  In this instance, the plaintiff alleges that the defendants threatened and acted against him to persuade him to drop the 2022 lawsuit, and as a result, have violated his First Amendment rights of freedom of speech, to petition the government, and to right of access to the courts.  (D. 23 at 10).

Even accepting these allegations as true, however, Count One fails to state a valid section 1983 claim.  To prevail under section 1983, a plaintiff must show that the defendants (1) acted under "color of state law" and (2) "deprived [the] plaintiff of a right secured by the Constitution or the laws of the United States."  *Budnick v. Baybanks, Inc.*, 921 F. Supp. 30, 32 (D. Mass. 1996).  The plaintiff cannot satisfy the first element here because he fails to allege any facts to suggest, let alone show that the

---

[4] Count One does not explicitly refer to section 1983 but the plaintiff clarified at the May 23 status conference that Count One does assert a section 1983 claim.

defendants, wholly private commercial entities, were ever acting "under color of state law."  This matters because section 1983 "does not apply to 'merely private conduct, no matter how discriminatory or wrongful.'"  *Grapentine v. Pawtucket Credit Union*, 755 F.3d 29, 31 (1st Cir. 2014) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).  Accordingly, as the complaint fails to suggest the defendants were ever acting under color of state law, Count One should be dismissed.

    B. Count Two – Violation of the MCRA

    Count Two asserts a violation of the Massachusetts Civil Rights Act ("the MCRA"), M.G.L. c. 12, 11I & H.  To prove a MCRA violation, a plaintiff must show that (1) his exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth of Massachusetts has been interfered with, or attempted to be interfered with, and (2) that the interference or attempted interference was by threats, intimidation, or coercion.  *Barbosa v. Conlon*, 962 F. Supp. 2d 316, 331–32 (D. Mass. 2013) (internal quotations and citations omitted).  The purpose of the MCRA is to provide a state law remedy coextensive with 42 U.S.C. § 1983, except that a MCRA plaintiff does not have to show any state action.  *Kelly v. LaForce*, 288 F.3d 1, 10 (1st. Cir. 2002).

The court finds that Count II pleads a valid MCRA claim.  The plaintiff alleges that the defendants violated his constitutional "right of free speech, right of access to the courts, and the right to own and enjoy his property" by charging him inflated mortgage fees and threatening him with foreclosure to get him to withdraw the 2022 lawsuit.  (D. 23 ¶ 67).  Courts have found that coercing a litigant to forgo exercising their legal rights can constitute a MCRA violation.  *See e.g., Buster v. George W. Moore, Inc.*, 438 Mass. 635, 648 (2003) (noting that use of coercion to pressure litigants to withdraw their appeals can constitute a MCRA violation); *Lopez v. Bd. of Selectmen*, 86 Mass. App. Ct. 1110, 1 (2014) ("The use of coercion in an attempt to interfere with a person's exercise of legal rights violates [MCRA]").

The defendants do not acknowledge this precedent but they do advance two related arguments implicitly challenging it.  Neither persuades.  First, they contend that the only protectible First Amendment interests a plaintiff enjoys for purposes of advancing a MCRA claim are those interests that are codified in Massachusetts' anti-SLAPP statute, M.G.L. c. 231, § 59H.[5]  The defendants do not clearly explain why this is so, or specifically

---

[5] The Anti-Strategic Litigation Against Public Participation ("anti-SLAPP") statute is designed to "target meritless suits brought to discourage individuals from exercising their constitutional right of petition."  *Bristol Asphalt Co., Inc. v. Rochester Bituminous Prods.*, Inc., 942 Mass. 539, 540 (2024).

define what those interests are, but they argue that this proposition impels dismissal of the MCRA claim because the anti-SLAPP statute "only applies to actions brought against government institutions." As such, so the defendants reason, the plaintiff may not bring a First Amendment-based MCRA claim against them because they are not governmental institutions. This argument has no force. Again, the precedent cited above, which the defendants do not address or dispute, makes clear that a plaintiff may assert a valid MCRA claim where a non-governmental defendant coerces them into forgoing their right to seek legal redress.[6]

Second, the defendants argue that the MCRA only prohibits compelling a plaintiff to take an action they are not legally obligated to perform, but does not proscribe interfering with a plaintiff's right to engage in conduct permitted by law, i.e., they argue that it does not bar their "attempting to deprive [the plaintiff] of his right to continue with this action. . . ." This argument is without force for the same reasons noted above; there is no question that acting to deprive a plaintiff of their right to do something the law permits them to do may constitute a MCRA violation. *See e.g., Buster*, 438 Mass. at 648 (pressuring

---

[6] The defendants cite to a 1997 Massachusetts Appeals Court decision for support but the case they cite is not instructive where it does not reference or discuss the MCRA and in any event predated *Buster* and *Lopez* by several years. *See DuracraftCorp. v. Holmes Prods. Corp.*, 42 Mass. App. Ct. 572 (1997).

plaintiffs to withdraw their appeals to prevent foreclosure could be considered economic coercion violative of the MCRA); *cf. Kennie v. Nat. Res. Dep't*, 451 Mass. 754, 763 (2008) (threats to rig results of a survey in order to block plaintiff's attempt to obtain a property development permit may violate MCRA); *Redgrave v. Boston Symphony Orchestra, Inc.*, 399 Mass. 93, 98-100 (1987) (depriving plaintiff of their right to perform pursuant to a contract may violate MCRA); *Pheasant Ridge Assocs. Ltd. P'ship v. Town of Burlington*, 399 Mass. 771 (1987) (threats to unlawfully take plaintiff's land by eminent domain in order to block development may violate MCRA); *Batchelder v. Allied Store Corp.*, 393 Mass. 819, 822-23 (1985) (preventing plaintiff from distributing political written materials may violate MCRA).[7]

Per the foregoing, the court finds that Count Two pleads a valid MCRA claim.

C. Count Three – Violation of the FDCPA

Count Three alleges a violation of the FDCPA, 15 U.S.C. §§ 1692-1692p. The FDCPA prohibits a wide range of practices, including, among other things, making false claims about the amount of debt that is owed. 15 U.S.C. § 1692e. To prevail, a plaintiff

---

[7]Moreover, to the extent the defendants argue that the complaint does not allege that the defendants forced the plaintiff to do anything he was not required to do, it does allege that the defendants attempted using the specter of foreclosure to force him to pay increased fees. (*See* D. 23 at ¶¶ 77-79).

must establish three elements: (1) that he was the object of collection activity arising from consumer debt, (2) the defendants are debt collectors as defined by the FDCPA, and (3) the defendants engaged in an act or omission prohibited by the FDCPA. *O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 30 (D. Mass. 2014) (quoting *Som v. Daniels L. Offs., P.C.*, 573 F. Supp. 2d 349, 356 (D. Mass. 2008)).

The court finds that Count Three pleads a viable FDCPA claim where it alleges that: (1) the defendants have attempted to obtain mortgage payments; (2) the defendants acknowledge that they hold and service the plaintiff's mortgage; and (3) the plaintiff alleges that the defendants are unfairly seeking to force him pay more than what he owes.

In seeking dismissal, the defendants do not actually argue that the complaint fails to plead these elements. Rather, they argue that they are merely "entities who do no more than enforce security interests in nonjudicial foreclosure proceedings in accordance with state law." They argue that this matters for FDCPA purposes because entities that are engaged solely in such nonjudicial foreclosure proceedings are largely exempt from the prohibitions of the FDCPA, and are subject only to the restrictions set forth in section 1692f(6). *See Britton v. Marcus, Errico, Emmer & Brooks, P.C.*, No. 1:18-cv-11288-IT, 2022 WL 2308934, at *5

10

(D. Mass. June 27, 2022)).  Section 1692f(6) in turn only prohibits
a debt collector from "[t]aking or threatening to take any
nonjudicial action to effect dispossession or disablement of
property if" the defendants presently have no right or intent to
take possession of the property.[8]  The defendants argue that this
provision applies here and merits dismissal of Count Three because
they have not commenced any foreclosure proceedings or made any
statements evincing an intent to take possession of the property,
and the complaint moreover does not allege that they have taken
such action.

        The defendants' argument fails to persuade.  Notwithstanding
their assertion that they are merely "entities who do no more than
enforce security interests in nonjudicial foreclosure
proceedings," the record, scant as it is at this early juncture,
suggests that the defendants were in fact performing other
functions akin to that of a traditional debt collector.  Indeed,
the defendants themselves have attached a document as an exhibit

---

[8] In full, section 1692f(6) prohibits a debt collector from:

>       Taking or threatening to take any nonjudicial action to
>       effect dispossession or disablement of property if" the
>       defendants presently have no right or intent to take
>       possession of the property if – (A) there is no present
>       right to possession of the property claimed as
>       collateral through an enforceable security interest;
>       (B) there is no present intention to take possession of
>       the property; or (C) the property is exempt by law from
>       such dispossession or disablement.

15 U.S.C. § 1692f(6).

to their motion reflecting that SN Servicing, as part of its
relationship with US Bank, sent the plaintiff a letter in October
2023 reflecting that SN Servicing was "attempting to collect [a]
debt" from the plaintiff for one or more outstanding mortgage
payments. (D. 14-7 at 2). The contours and relative merits of
the FDCPA claim will be revealed through discovery but dismissal
is not presently warranted on the ground advanced by the
defendants.

D. Count Four – Violation of M.G.L. c. 93A

Count IV alleges a violation of Massachusetts' consumer
protection statute, M.G.L. c. 93A. The plaintiff avers that the
defendants engaged in unfair and deceptive acts by adding "bogus
charges" to his monthly mortgage and harassing and threatening him
for initiating the 2022 lawsuit, which they were seeking to get
him to drop. As the defendants do not dispute that these
allegations, if true, would support a claim for violation of
Chapter 93A, the court presumes for present purposes that they
would.

The defendants argue that Count Four should be dismissed
against both defendants because the plaintiff failed to properly
serve US Bank with a demand letter. Their argument goes as
follows. A plaintiff must timely serve a defendant with a demand
letter before bringing a Chapter 93A claim. See M.G.L. c. 93A, §

9(3).  Here, the plaintiff sent a demand letter to SN Servicing as the mortgage servicer, but never sent a letter to US Bank as the lender/mortgage holder.   The defendants argue that US Bank consequently may not be sued because it never got the letter.  They argue further that SN Servicing, despite having received a demand letter, cannot be sued as US Bank's agent because SN Servicing has no contractual relationship or privity with the plaintiff and thus cannot be held liable to him.   The defendants cite a bankruptcy court decision from this district supporting the proposition that a borrower cannot sue a mortgage servicer for breach because the servicer has no contractual relationship or privity with the borrower. *See In re Jackson*, 622 B.R. 321, 331 (Bankr. D. Mass. 2020).   But even assuming that *Jackson* provides an accurate statement of the law, the defendants' reliance on it is misplaced here.

Notably, the complaint alleges that both defendants engaged in unfair and deceptive acts against the plaintiff.  It further alleges facts suggesting the defendants may share more than a traditional principal-agent relationship and be interrelated in some way.  It alleges, for example, that the defendants have the same business address, which the defendants do not dispute.  (D. 23 ¶ 21).  Further, it alleges that the plaintiff sent the demand letter to SN Servicing and also addressed it to LB-Igloo Series IV

Trust, which defendant U.S. Bank acts as trustee for, and an attorney responding on SN Servicing letterhead represented among other things that "I represent U.S. Bank Trust National Association, as Trustee of LB-Igloo Series IV Trust." (D. 1 at 63-67). Thus, even if the plaintiff did not send a separate letter to US Bank, the record affirms that the letter was sent to an entity which US Bank is a trustee of, and counsel responded to the plaintiff's demand letter stating, among other things, that he represented US Bank. These facts are sufficient in the court's view to establish that the plaintiff adequately served US Bank with the demand letter. Dismissal therefore is not warranted on this ground.

    E. Count Five – IIED.

    Count Five asserts a claim for intentional infliction of emotional distress ("IIED"). "The standard for making a claim of intentional infliction of emotional distress is very high." *Polay v. McMahon*, 468 Mass. 379, 385 (2014). To prevail on an IIED claim, a plaintiff must show "(1) that the defendant intended, knew, or should have known that [his/her] conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Id.* To be considered extreme and outrageous, a defendant's conduct must "go beyond all

14

possible bounds of decency." *McCusker v. Ocwen Loan Servs.*, No. 14-13663-MGM, 2015 WL 4529986, at *7 (D. Mass. July 27, 2015). "Insults, indignities, threats, annoyances" and even questionable business tactics are not enough to state an IIED claim. *Id.*

The complaint alleges that the defendants' conduct in retaliating against him for the 2022 lawsuit and seeking to force him to drop the lawsuit by, among other things, improperly adding certain fees to his mortgage payments, threatening foreclosure, and failing to credit certain payments, was extreme and outrageous. The defendants argue in support of dismissal that the alleged conduct fails to rise to the level that would support an IIED claim. The court agrees with the defendant.

Courts have consistently dismissed IIED claims arising in the foreclosure context. This is the case even where, as here, the defendants reportedly used questionable business practices or conveyed improper threatening communications, on the ground that such behavior is not egregious enough to rise to the level of extreme and outrageous conduct. *See e.g., O'Brien v. Wilmington Trust N.A.*, 506 F. Supp. 3d 82, 101 (D. Mass. 2020) (holding that even questionable business practices in foreclosure cases did not plausibly allege extreme and outrageous conduct); *Akar v. Fannie Mae*, 845 F. Supp. 2d 381, 385 (D. Mass. 2012) (holding that behavior sufficient to make out claims for bad faith and

misrepresentation does not go 'beyond all bounds of decency' so as to support IIED claim); *McCusker v. OcWen Loan Servs., LLC*, No. 14-13663-MGM, 2015 WL 4529986, *7 (D. Mass. July 27, 2015) (holding that communications made to mislead plaintiffs regarding a mortgage payment did not suffice to support a proper IIED claim); *Koufous V. U.S. Bank, N.A.*, 939 F. Supp. 2d 40, 54 (D. Mass. 2013) (holding "continued threats" to collect upon a debt and foreclosure were insufficient to support an IIED claim).

While the foregoing precedent certainly does not foreclose the legal possibility that a plaintiff could plead a viable IIED claim in the foreclosure context, it underscores the high bar that must be met.  In this case, the court finds that the complaint falls short of meeting that standard.  Count Five therefore should be dismissed.

F. Count Six – Breach of Contract

Count Six asserts a claim for breach of contract.  The complaint somewhat amorphously alleges that the plaintiff "executed a mortgage agreement or contract and promissory note" but the plaintiff clarified at a post-hearing conference that the contract at issue is the mortgage.

To state a claim for breach of contract, a plaintiff must allege "the existence of a contract, his compliance with its terms, breach, and damages." *Foss v. Marvic*, 365 F. Supp. 3d 164, 167

(D. Mass. 2019) (citing 5 *Wright & Miller's Federal Practice & Procedure* § 1235 (4th ed. 2019)). Although Rule 8(a) of the Federal Rules of Civil Procedure does not require great detail, a plaintiff must provide enough specificity to adequately notify a defendant of the nature of the claim. *Id.*; *see* Fed. R. Civ. P. 8(a) (requiring a short and plain statement showing the plaintiff is entitled to relief). To that end, "a claim for breach of a written contract must either (1) quote pertinent contractual language; (2) contain a copy of the contract as an attachment; or (3) summarize the contract's purported legal effect." *Id.*

The defendants argue that Count Six should be dismissed because the plaintiff has failed to identify any contractual provision that they reportedly breached. The court agrees. For a contract claim to survive a motion to dismiss, "[p]laintiffs ... must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep." *Higgins v. Town of Concord*, 246 F. Supp. 3d 502, 518 (D. Mass. 2017) (citing *Brooks v. AIG SunAmerica Life Assur. Co.*, 480 F.3d 579, 586 (1st Cir. 2007)). The First Circuit has interpreted Rule 12(b)(6) to "require[ ] that plaintiffs allege a factual predicate concrete enough to warrant further proceedings." *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007)

(upholding dismissal of contract claim that failed to allege sufficient facts) (internal quotations omitted).  Indeed, the First Circuit has explained that to survive a motion to dismiss, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 66-67 (1st Cir. 2004).

The complaint does not meet this standard.  Although the plaintiff clarified that the contract at issue is the mortgage, he fails to particularize each of the myriad claimed alleged breaches and fails further to tie each breach to a specific provision of the mortgage.  Without more, the claim is too vague and imprecise to provide meaningful guidance to the defendants.  The claim therefore should be dismissed, but without prejudice, subject to the plaintiff's ability to amend to set out specific facts demonstrating his entitlement to relief for each claimed breach.

G. <u>Count Seven – Breach of the Implied Covenant</u>

Count Seven asserts a claim for breach of the implied covenant of good faith and dealing.  Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract.  *UNO Rests., Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004).  As such, every contract inherently includes the promise that "neither party shall do anything that will have the effect of

destroying or injuring the rights of the other party to receive the fruits of the contract." *Robert Reiser & Co. v. Scriven*, 130 F. Supp. 3d 488, 495 (D. Mass. 2015) (quoting *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 471-72 (1991)). To recover, a claim for breach of the implied covenant of good faith and fair dealing "requires conduct taken in bad faith either to deprive a party of the fruits of labor already substantially earned or unfair leveraging of the contract terms to secure [an] undue economic advantage." *Christensen v. Kingston Sch. Comm.*, 360 F. Supp. 2d 212, 226 (D. Mass. 2005). Notably, a party may breach the implied covenant of good faith and fair dealing "without breaching any express term of that contract." *Speakman v. Allmerica Fin. Life Ins.*, 367 F. Supp. 2d 122, 132 (D. Mass. 2005).

The complaint here alleges among other things that the defendants "made it impossible for Plaintiff to reap the fruits/benefits of the bargain and the benefits of Plaintiff's contract with Defendants." While not overly fulsome, it is enough against the backdrop of the complaint's numerous assertions of threats, retaliation, and harassment, including the claim that the defendants sought to increase the plaintiff's mortgage payments to include their attorneys' fees, to plead a viable claim that the

defendants acted in bad faith when dealing with the plaintiff and the mortgage.[9]

### IV.   Recommendation

In light of the foregoing, the defendants' renewed motion to dismiss should be GRANTED in part and DENIED in part.  It should be GRANTED as to Counts One, Five and Six.  Count Six should be dismissed without prejudice, however, with 14 days for leave to amend from the date this recommendation is adopted, if it is adopted.  The motion to dismiss should otherwise be DENIED with respect to Counts Two, Three, Four, and Seven.[10]

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED:  July 31, 2025

---

[9] The defendants argue contrarily that there can be no breach of the implied covenant of good faith and fair dealing if there is no breach of the contract itself. As noted above, however, that proposition is not correct. *See Speakman*, 367 F. Supp. 2d at 132.  The case the defendants cite to support their position actually undermines rather than supports their argument and affirms that a party may breach the implied covenant without breaching the underlying contract at issue.  *See A.L. Prime Energy Consultant, Inc. v. Mass. Bay Transp. Auth.*, 479 Mass. 419, 433 (2018) (noting that a party's "broad latitude" to act under a contract "does not immunize it against" an allegation of breach of the implied covenant of good faith).

[10] The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for the First Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Sec'y of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982).